# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SANDRA CUBAS, )
 )
    PLAINTIFF, )
 ) Civil Action No._____
v. )
 )
CLIENT SERVICES, INC. )
and CITIBANK )
(SOUTH DAKOTA) N.A., )
 )
    DEFENDANTS, )

## COMPLAINT

Plaintiff, Sandra Cubas, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant Client Services, Inc., and Citibank (South Dakota) N.A. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and also violations of state law.

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331, 1337, and 1367.

2. Venue in this District is proper because Defendants' collection demands were received here and Defendants transact business here.

## PARTIES

3. Plaintiff, Sandra Cubas, ("Plaintiff") is an individual and resident of the State of Illinois, and is a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4. Defendant, Client Services, Inc. ("CSI") is a corporation engaged as a "debt collector" as defined by and within the meaning of the FDCPA, and is engaged in

the business of collecting debts in this State where Defendant regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of delinquent consumer debts using the mails and telephone. (Exhibit A, Printout from Defendant's website).

     5.     CSI is a collection agency licensed to do business in Illinois, and may be served at its principal place of business located at 3451 Harry S. Truman Blvd., St. Charles, MO 63301. (Exhibit B, Printouts from Illinois Division of Professional Regulation and Illinois Secretary of State websites).

     6.     Defendant, Citibank (South Dakota) N.A., ("Citibank") is a direct banking and payment services company which operates the "Citi Card". Citibank is a Delaware corporation that does business in the Northern District of Illinois.

## FACTS

     7.     Some time before September 28, 2010, Plaintiff incurred a financial obligation for a Citibank AT&T Universal Mastercard associated with Acct# XXXX-XXXX-XXXX-4086 for charges she incurred for household and personal purposes via use of the card ("alleged debt"), and said obligation is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

     8.     Due to her financial circumstances, Plaintiff could not pay the alleged debt, and the debt went into default.

     9.     Sometime thereafter, the alleged debt was assigned, placed or otherwise transferred to Defendant CSI for collection from Plaintiff, and Plaintiff attempted to settle her Citibank debt with CSI.

10.     At all times relevant hereto, Debt Zero Central ("DZC") was acting as Plaintiff's authorized agent for the purpose of settling her debts. DZC has a principal place of business at 815 Commerce Drive, Suite 120, Oakbrook, IL 60523.

11.     At all times relevant hereto, CSI was acting as an authorized agent on behalf of Citibank in its attempts to collect the alleged debt from the Plaintiff, and Citibank authorized CSI to bring about collection of the alleged debt from the Plaintiff.

12.     On or around September 28, 2010, via negotiations with and through DZC and Defendants by telephone, Defendants agreed to accept $1,800.00 as settlement in full on the alleged debt ("Agreement"), on substantially the following terms excerpted from a letter from CSI to the Plaintiff that was sent to Plaintiff to memorialize the Agreement:

> **RE: Citibank (South Dakota) NA-CITI AT&T UNIVERSAL MASTERCARD**
>
> **I am forwarding this letter to confirm that our client has agreed to accept $1800.00 as settlement in full for the above obligation.**
>
> **This offer is valid provided the full amount of the settlement is received according to the following schedule.**
>
> | **AMOUNT DUE** | **DUE DATE** |
> |---|---|
> | **$1800.00** | **10/8/10** |

(Exhibit C, Letter from CSI dated September 28, 2010)

13.     One day after the Agreement, on September 29, 2010, Plaintiff caused to be sent to CSI a check for $1800.00, representing the full amount of the settlement. (Exhibit D, copy of check paid to Citibank in full settlement of alleged debt).

14.     CSI received the settlement check before October 8, 2010.

15. By submitting said settlement check for $1800.00 in good funds, Plaintiff had complied with all conditions imposed upon her by the Agreement.

16. CSI refused to cash the settlement check. On or around October 19, 2010, DZC's escrow settlement company, NoteWorld Servicing Center, received, via US Mail, an envelope sent from CSI containing the settlement check it had previously sent out to CSI on September 29, 2010, that Plaintiff had sent per the Agreement terms.

17. Thereafter, on October 19, 2010, during the pendency of a telephone conversation between CSI employee Tabatha Powell and DZC employee Mike Duhig, Ms. Powell informed Mr. Duhig that Citibank had "pulled the account", that $6216.82 was owed by Plaintiff on the alleged debt, and that the settlement check was returned because the Agreement was not going to be honored.

18. Upon information and belief, Citibank had forwarded the account to another collection agency after it had executed the Agreement with Plaintiff on September 28, 2010.

19. Upon information and belief, Citibank continues to attempt collection of the alleged debt from the Plaintiff.

**COUNT I-VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq.*—CLIENT SERVICES INCORPORATED**

20. Plaintiff incorporates paragraphs 1-19.

21. In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the FDCPA, 15 U.S.C. § 1692 in one or more of the following ways:

   a) Defendant violated 15 U.S.C § 1692d when it oppressively failed to honor a settlement Agreement that it had entered into to settle the alleged debt;

    b)    Defendant violated 15 U.S.C § 1692e when it falsely and deceptively claimed in a telephone conversation with DZC on October 19, 2010 that Plaintiff owed an amount on the alleged debt that she did not owe;

    c)    Defendant violated 15 U.S.C § 1692e when it deceptively failed to honor the Agreement that it had entered into with Plaintiff to settle the alleged debt;

    d)    Defendant violated 15 U.S.C. § 1692e(10) by falsely representing to Plaintiff and her agents that Citibank would accept $1800.00 to settle the alleged debt for $1,800.00;

    e)    Defendant violated 15 U.S.C § 1692e(10) when it deceptively failed to honor the Agreement that it had entered into to settle the alleged debt;

    f)    Defendant violated 15 U.S.C § 1692e(10) when it deceptively failed to inform Plaintiff that Citibank had retrieved the account pertaining to the alleged debt before it executed the Agreement with Plaintiff;

    g)    Defendant violated 15 U.S.C. § 1692f when it unfairly induced Plaintiff to make payments on the alleged debt under false terms;

22.    As a direct and proximate result of one or more of the statutory violations above, Plaintiff has suffered *inter alia*, severe emotional distress, nervousness, fear of answering the telephone, depression, irritability, worry, fear, anxiety, and financial damages. Plaintiff was forced to hire an attorney to attempt to resolve the issue of Citibank's continued efforts to attempt to collect a debt from her in an amount that she does not owe, and Plaintiff suffered the loss of use of $1800.00 that she had paid to Citibank to settle the alleged debt, which she could have paid to other due and owing accounts she has and/or deposited to an interest-bearing account so that interest could have accrued on said $1800.00 sum. (Exhibit E, Affidavit).

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant, for the following:

a. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k;

b. Actual damages suffered by the Plaintiff;

c. Plaintiff's attorney fees and costs;

d. Any other relief deemed appropriate by this Honorable Court.

## COUNT II-CIVIL CONSPIRACY TO DEFRAUD-CITIBANK AND CSI

23. Plaintiff incorporates paragraphs 1-22.

24. On and before September 28, 2010, Defendant Citibank was a direct banking and payment services company which operated the "Citi Card".

25. On and before September 28, 2010, Defendant CSI was a debt collection agency in the business of collecting defaulted debts from consumers.

26. At some time prior to September 28, 2010, Defendants entered into an agreement whereby Defendant CSI would attempt to collect the alleged debt from Plaintiff, via use of the telephone and mail.

27. On or around September 28, 2010, via negotiations with and through DZC, Defendants agreed with each other, and with the Plaintiff, to accept $1,800.00 as settlement in full on the alleged debt ("Agreement"), on the following terms excerpted from a letter from CSI to the Plaintiff:

> **RE: Citibank (South Dakota) NA-CITI AT&T UNIVERSAL MASTERCARD**
>
> **I am forwarding this letter to confirm that our client has agreed to accept $1800.00 as settlement in full for the above obligation.**
>
> **This offer is valid provided the full amount of the settlement is received according to the following schedule.**
>
> | **AMOUNT DUE** | **DUE DATE** |
> |---|---|
> | **$1800.00** | **10/8/10** |

(Exhibit C, Letter from CSI dated September 28, 2010)

28. Plaintiff timely sent a settlement check in the amount of $1800.00 to Citibank via CSI to settle the alleged debt in full, and fully performed her obligation under the Agreement thereby.

29. At some time between September 28, 2010 and October 19, 2010, Defendants agreed to deny the existence of the Agreement, and proceeded to conduct business as if the Agreement had not been executed by attempting to collect $6,216.82 from the Plaintiff via letter and phone.

30. Specifically, in furtherance of the conspiracy to defraud the Plaintiff by collecting an amount from her that she does not owe, CSI denied the existence of the Agreement and informed DZC that Plaintiff owed an alleged debt of $6,216.82 to Citibank.

31. Specifically, in furtherance of the conspiracy to defraud the Plaintiff by collecting an amount from her that she does not owe, Citibank placed responsibility for the collection for the collection of the alleged debt with another debt collector.

32. At the time Citibank placed the account with another debt collector for collection from the Plaintiff, Plaintiff was not in default of any of the Agreement terms, and had complied with all terms of the Agreement.

33. As a result of Defendants' actions, Plaintiff suffered, *inter alia*, Plaintiff has suffered *inter alia*, severe emotional distress, nervousness, fear of answering the telephone, depression, irritability, worry, fear, anxiety, and financial damages, including the loss of use of $1800.00 that she had paid to Citibank to settle the alleged debt, which she could have paid to other due and owing accounts she has and/or deposited to an interest-bearing account so that interest could have been accrued on said $1800.00 sum.

Plaintiff was also forced to hire an attorney to attempt to resolve the issue of Citibank's continued efforts to attempt to collect a debt from her in an amount that she does not owe. (Exhibit E, Affidavit of Damages).

WHEREFORE, Plaintiff requests that judgment be entered in her favor against the Defendants for:

    A.    Actual damages;

    B.    Costs and reasonable attorney fees;

    C.    Punitive Damages; and,

    D.    Such other or further relief as the Court deems proper.

## COUNT III-CONSUMER FRAUD-CITIBANK

34. Plaintiff incorporates paragraphs 1-33.

35. At all relevant times, there was in full force and effect in the State of Illinois a statute commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

36. Plaintiff is a consumer within the meaning of the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(e)].

37. The collection of consumer debts constitutes services as defined by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(b)].

38. The collection of consumer debts constitutes trade and commerce as defined by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(f)].

39. Duly authorized agents of Citibank, namely employees and/or agents of CSI made material misrepresentations to Plaintiff regarding the amount of her ongoing

liability on the alleged debt, and the amount Citibank would accept to settle the alleged debt.

40. Specifically, said misrepresentations include the statement made by Citibank agent and CSI employee Tabatha Powell, during the pendency of a telephone conversation with an agent of the Plaintiff named Mike Duhig on September 28, 2010, that Citibank would accept $1800.00 to settle the alleged debt if said amount was paid by the Plaintiff by October 8, 2010.

41. Plaintiff relied on Citibank's misrepresentations and sent a check to Citibank in the amount of $1800.00 to settle the alleged debt, per the terms of the Agreement, so that CSI would receive the check before October 8, 2010. (Exhibit D, copy of check paid to Citibank in full settlement of alleged debt).

42. Plaintiff relied on Citibank's representation that it would settle the alleged debt for $1800.00, and Plaintiff made payment toward the settlement amount thereafter in said reliance, which was reasonable. Citibank in fact received the settlement check from the Plaintiff before October 8, 2010.

43. Plaintiff would not have made payments toward the alleged debt had she known that Citibank had not intended to honor the Agreement.

44. Plaintiff was damaged by Citibank's actions and suffered, *inter alia*, emotional distress, feelings of helplessness, anxiety, and financial damages as the result of Citibank's attempts to collect said alleged debt, including the loss of use of $1800.00 that she had paid to Citibank to settle the alleged debt, which she could have paid to other due and owing accounts she has and/or deposited to an interest-bearing account so that interest could have been accrued on said $1800.00 sum. (Exhibit E, Affidavit of

Damages).

45. Citibank's conduct is part of a pattern of misconduct which affects consumers and the public interest, and has a potential for repetition and further injury to others. Its actions in relentlessly attempting to collect a debt from Plaintiff in an amount she does not owe were made in reckless disregard of the rights of Plaintiff, thereby warranting the imposition of punitive damages.

46. At all times relevant to the facts alleged in this complaint, CSI's efforts to collect the debt from Plaintiff were duly authorized by Citibank, which had hired CSI to bring about collection of the alleged debt from the Plaintiff.

WHEREFORE, Plaintiff requests that judgment be entered in her favor against the Defendant for:

A. Actual damages;

B. Punitive damages in the amount of $50,000;

C. Costs of bringing this action and attorney fees incurred in so doing, pursuant to 815 ILCS 505/10 (c);

D. Whatever other relief this Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury.

By: s/ Mario Kris Kasalo
Mario Kris Kasalo

**The Law Office of M. Kris Kasalo**
**"A Consumer Protection Law Firm"**
111 East Wacker Drive, Suite 555
Chicago, Illinois 60601
tele 773.847.2600
fax 773.847.0330
Mario.Kasalo@Kasalolaw.com